# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
### WESTERN DIVISION

COX AUTOMOTIVES, INC.,      )
      )
      Plaintiff,      )
      )
v.      )      No. 4:24-cv-00292-DGK
      )
SUPER DISPATCH INC.,      )
      )
      Defendant.      )

## ORDER DENYING PARTIAL MOTION TO DISMISS

This case arises from Plaintiff Cox Automotives, Inc's ("Cox") allegations that Defendant Super Dispatch Inc. ("Super Dispatch") is engaging in false advertising and unfair competition and has also committed various business torts against Cox. Super Dispatch denies the allegations.

Now before the Court is Super Dispatch's partial motion to dismiss Cox's Second Amended Complaint. ECF No. 117. For the reasons discussed below, the motion is DENIED.

### Standard

A claim may be dismissed if it fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In ruling on a motion to dismiss, the Court "must accept as true all of the complaint's factual allegations and view them in the light most favorable to the plaintiff[]." *Stodghill v. Wellston Sch. Dist.*, 512 F.3d 472, 476 (8th Cir. 2008). To avoid dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff need not demonstrate the claim is probable, only that it is more than just possible. *Id.*

## Background

Accepting the Second Amended Complaint's factual allegations as true, viewing these allegations in the light most favorable to Plaintiff, and drawing all reasonable inferences in Plaintiff's favor, the Court finds the facts to be as follows for purposes of the pending motion.

Cox operates an online platform called CentralDispatch that facilitates the transportation of automobiles by connecting vehicle shippers with vehicle carriers. In the automotive industry, this is known as a "load board." CentralDispatch is a subscription-based service that requires users to login with a username and password and to agree to the platform's terms of use which expressly prohibit transmitting information to third parties.

The platform functions as follows. Shippers post vehicles that require transport along with information related to the vehicle. Carriers view those listings and coordinate with the shipper to transport a vehicle. Shippers can review the carrier's profile to verify it meets their criteria and assign a carrier to transport the vehicle. At any given time, CentralDispatch hosts more than 50,000 vehicles for transport and facilitates millions of transactions a year. Over 13,000 carriers with over 40,000 trucks use CentralDispatch to find vehicles to ship each week.

A significant percentage of vehicle listings are posted exclusively on CentralDispatch and not cross-listed on other public load boards. As a result, CentralDispatch provides its subscribers with information that is not publicly available. Each listing typically includes: a description of the vehicle (including dimensions and weight); the origin and destination; the price and payment terms; the desired delivery date; details about the shipper, including the name of the owner/manager, address, telephone number, email address; and a rating score based on reviews from other carriers.

2

This information—which is collected for millions of transactions each year—powers features such as CentralDispatch's "Price Compare." This feature, available only to subscribers, provides pricing information for transporting vehicles along similar routes (i.e., similar origins and destinations). In addition, the information gives Cox valuable insight into its customer base, enabling it to develop, refine, and market its products more effectively.

Super Dispatch operates a competing load board called Super Loadboard. As part of its platform, Super Dispatch offers a browser extension and a mobile app that allow users to export listing information from CentralDispatch into Super Loadboard. Beyond individual exports, Super Dispatch has also developed and used a software tool—commonly known as a "scraper"— to collect similar information from password-protected areas of CentralDispatch.

Cox's Second Amended Complaint Super asserts seven counts against Super Dispatch. Super Dispatch seeks dismissal of Counts II (misappropriation of trade secrets) and V (unjust enrichment) pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court rules as follows.

## Discussion

### I. Cox has alleged a trade secret under Count II.

Super Dispatch argues Count II should be dismissed because Cox fails to allege the existence of a trade secret under the Missouri Uniform Trade Secrets Act ("MUTSA"). Cox contends that its compiled listing data qualifies as a trade secret.

To state a claim under MUTSA, Cox must demonstrate "(1) the existence of protectable trade secrets, (2) misappropriation of those trade secrets by the defendant, and (3) damages." *LifeScience Techs., LLC v. Mercy Health*, 632 F. Supp. 3d 949, 956 (E.D. Mo. 2022) (citing Mo. Rev. Stat. § 417.453(2)). MUTSA defines a trade secret as:

> information, including but not limited to, technical or nontechnical data, a formula, pattern, compilation, program, device, method,

> technique, or process, that: (a) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use; and (b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Mo. Rev. Stat. § 417.453(4). Super Dispatch contends that Cox fails to allege facts supporting either factor of the definition.

First, Super Dispatch argues that Cox's compiled listing information is not a trade secret because the information originates from and is accessible by CentralDispatch's subscribers. This argument is unpersuasive. As the Eighth Circuit has explained, "the fact that some or even most of the information [is] publicly available is not dispositive of the first factor in the [M]UTSA definition." *AvidAir Helicopter Supply, Inc. v. Rolls-Royce Corp.*, 663 F.3d 966, 972 (8th Cir. 2011). Rather, compilations of public information "can be valuable so long as the combination affords a competitive advantage and is not readily ascertainable." *Id.*; *see also Conseco Fin. Servicing Corp. v. N. Am. Mortg. Co.*, 381 F.3d 811, 819 (8th Cir. 2004) (holding that a financial services company's lead sheets were trade secrets under MUTSA even if the underlying information was provided by the consumers and publicly available through other means). Further, the value of compiled information

> is not dependent on how much of the information is otherwise unavailable because the effort of compiling useful information is, of itself, entitled to protection even if the information is otherwise generally known. . . . The fact that information can be ultimately discerned by others—whether through independent investigation, accidental discovery, or reverse engineering—does not make it unprotectable. Instead, the court must look at whether the duplication of the information would require a substantial investment of time, effort, and energy.

*AvidAir*, 663 F.3d at 972–73 (internal citations and quotations omitted).

Applying these principles here, Cox sufficiently alleges that its listing information is a trade secret, even if the information originates from and is accessible by CentralDispatch's subscribers. The Second Amended Complaint alleges that Cox utilizes the listing information to power CentralDispatch's "Price Compare" feature and to improve the platforms products and services. Therefore, one could reasonably infer that it is Cox's "combination" of listing information that "affords [it] a competitive advantage." *See AvidAir*, 663 F.3d at 972; *Conseco*, 381 F.3d at 819. This is especially true where, as alleged here, a significant percentage of CentralDispatch's listings are exclusive to the platform such that Cox can generate data insights not available to its competitors.

Further, given the scale and scope of CentralDispatch's platform, it is reasonable to infer that Cox's listing information requires a substantial investment of time, effort, and resources. By contrast, duplicating this compilation—that is, amassing millions of transactions to power analytical tools—would require significant time, effort, and expense from a competitor like Super Dispatch. Thus, one could reasonably infer that Super Dispatch utilizes it browser extension, mobile app, and scraping tool to collect listing information—whether piecemeal or en mass—to bolster its own data analytic functionality. That is, one could reasonably infer that Super Dispatch obtains economic value from the disclosure and use of the exported listing information. Accordingly, Cox has plausibly alleged the first factor in MUTSA's definition.

Second, Super Dispatch argues Cox failed to allege facts stating it made efforts to maintain the secrecy of the listing information. This argument is unpersuasive. Cox has sufficiently alleged its reasonable efforts to maintain the secrecy of its listing information. Access to listing information is limited to subscribers, protected by password authentication, and governed by policies prohibiting unauthorized disclosure. Such measures are more than adequate at the

pleading stage. *See id.* at 974 (noting "secrecy need not be overly extravagant, and absolute secrecy is not required"). Accordingly, because Cox has also plausibly alleged the second factor in MUTSA's definition, dismissal of Count II is not warranted here.

**II.    Cox has stated a claim for unjust enrichment under Count V.**

Super Dispatch argues Count V should be dismissed because Cox fails to allege that it conferred a direct benefit, opposed to an indirect benefit, on Super Dispatch. This argument is unavailing. "Federal courts interpreting Missouri unjust enrichment law have consistently rejected the contention that the plaintiff must directly confer the benefit upon the defendant." *Pietoso, Inc. v. Republic Servs., Inc.*, No. 19-CV-00397, 2024 WL 124719, at *5 (E.D. Mo. Jan. 11, 2024) (collecting cases from the Eastern and Western Districts of Missouri). While these cases are not binding, the Court finds them persuasive and finds Cox sufficiently alleged that it conferred an indirect benefit on Super Dispatch. Accordingly, dismissal of Count V is not warranted here.

**Conclusion**

For the foregoing reasons, Super Dispatch's motion to dismiss is DENIED.

**IT IS SO ORDERED.**

Date:  __May 23, 2025__                              __/s/ Greg Kays_____
                                                     GREG KAYS, JUDGE
                                                     UNITED STATES DISTRICT COURT