IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| COX AUTOMOTIVES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:24-cv-00292-DGK |
| | ) | |
| SUPER DISPATCH INC., | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER GRANTING IN PART MOTION FOR SANCTIONS**

This case arises from Plaintiff Cox Automotives, Inc's ("Cox") allegations that Defendant Super Dispatch Inc. ("Super Dispatch") has committed false advertising, unfair competition, and other business torts against Cox. Super Dispatch denies the allegations.

Now before the Court is Cox's Motion for Sanctions brought pursuant to Federal Rule of Civil Procedure 37(e) based upon Super Dispatch's failure to preserve the electronic records of two employees. ECF No. 133. Cox requests sanctions in the form of an adverse inference instruction and an award of attorneys' fees. Because the Court finds sanctions are warranted under Rule 37(e)(1), but not Rule 37(e)(2), the motion is GRANTED IN PART and DENIED IN PART. The sanctions shall consist of an award of attorneys' fees and a jury instruction.

**Background**

When motor vehicles are bought and sold, they often require transport to reach the purchaser. This is particularly the case for sales among vehicle brokers and dealers. Cox and Super Dispatch offer competing online platforms for facilitating automobile relocation. Cox's Central Dispatch platform is the leading auto transport marketplace. Super Dispatch is a relatively new entrant that got its start by offering software products that it initially marketed as

complementary to Central Dispatch. Eventually, Super Dispatch launched its own competing transportation platform that it marketed as superior to Central Dispatch.

On November 10, 2023, Joe Kichler, then Cox's Logistics Vice President, sent a letter to Bek Abdullayev, then Super Dispatch CEO, addressing what Cox alleged was Super Dispatch's unauthorized access to Central Dispatch and false advertising. Cox did not receive a response, and its outside counsel sent a follow-up letter on January 15, 2024. That letter directed Super Dispatch to preserve relevant materials, explicitly including "email."

On April 23, 2024, Cox filed suit against Super Dispatch alleging claims for false advertising, unfair competition, misappropriation of trade secrets, tortious interference with contracts and business relationships, and unjust enrichment. Cox sent a copy of its original Complaint to Super Dispatch the same day it was filed.

On August 6, 2024, Cox served interrogatories and document requests on Super Dispatch seeking, among other things, communications regarding Super Dispatch's Chrome extension and Super Loadboard, as well as communications with customers and potential customers. Interrogatory No. 1 asked Super Dispatch to "[i]dentify all current and former Super Dispatch employees who at any time have held a supervisory role in connection with the Super Dispatch Data Products and/or Super Loadboard."

The Court's issued its Scheduling and Trial Order on August 19, 2024. The order included instructions on electronically stored information ("ESI") preservation. ECF No. 29. It specifically required the parties to "take reasonable steps to ensure ESI . . . is not destroyed, removed, mutilated, altered, concealed, or deleted." Order at 6.

Super Dispatch served its initial responses to Cox's first set of interrogatories and requests for production on September 12, 2024. In it, Super Dispatch identified "Benjamin Hargis – Manager of Super Loadboard and Extension Team (former employee)" and "Anati Zubia – Vice President of Marketing (current employee)"[1] as current or former employees who held a supervisory role in connection with the Super Dispatch Data Products and/or Super Loadboard.

As Manager of the Super Loadboard and Extension Team, Hargis was responsible for two products at the center of this case: Super Dispatch's load board and its Chrome extension. Documents from other custodians that include Hargis' communications arguably show he was involved in Super Dispatch obtaining and using Central Dispatch customer credentials, "scraping" data from Central Dispatch, and customer communications.

As Vice President of Marketing, Zubia's responsibilities included trying to drive leads to Super Dispatch, marketing to potential customers, and handling Super Dispatch's website content (including blog posts). This included communicating with potential Super Dispatch customers through email. One issue in this litigation is Super Dispatch's allegedly false statements in blog posts and misleading communications to customers suggesting that its products are authorized by Cox Automotive to integrate with Central Dispatch.

Hargis had left Super Dispatch on June 28, 2024. At that time, Super Dispatch had a policy of transferring a departing employee's Google documents to their manager or the employee succeeding them, but not other parts of a departing employee's Google Suite, such as the employee's Google Calendar or Gmail (the employee's email). Super Dispatch did not alter this policy even though it had been cautioned by Cox to preserve electronic information, specifically including "emails."

---

[1] To be clear, Zubia was a current employee as of September 12, 2024, the date Super Dispatch served the responses. She left Super Dispatch eight days later, on September 20, 2024.

Zubia left Super Dispatch on September 20, 2024.

In supplemental Rule 26 initial disclosures served on October 18, 2024, Super Dispatch identified Hargis and Zubia as individuals "likely to have discoverable information."

On November 11, 2024, Super Dispatch informed Cox that documents for Hargis and one other former Super Dispatch employee may not have been retained. Naturally, Cox requested additional information about the failure to retain this information.

On December 13, 2024, Super Dispatch acknowledged that it had not retained documents for six former employees that it had previously identified as holding a relevant supervisory role: Anati Zubia and Benjamin Hargis, as well as Ben Hubbard (Chief Operating Officer), Sean Hampton (Vice President of Sales), Gaurav Jindal (Project Manager for Super Loadboard and Extension), and Apurva Kasam (Project Manager for Super Loadboard). Super Dispatch explained, "[t]he documents and communications . . . within [these individuals'] Google Suite accounts would have been deleted within 25 days from [the individuals'] respective accounts becoming inactive, which appears to align with their date of departure." Super Dispatch was unable to recover the deleted documents.

Cox subsequently investigated Super Dispatch's failure to retain Hargis and Zubia's documents.[2] In his deposition, Super Dispatch's Legal and Compliance Manager, Eldor Fazilov, who is not an attorney but whose responsibilities include providing legal advice, testified that after he became aware of the November 2023 letter, Super Dispatch did not take any action to ensure documents related to the dispute would be preserved. He also testified that after the suit was filed

---

[2] Because the other four employees left before Cox sent the November 2023 letter, Cox is not pursuing sanctions based on Super Dispatch's failure to retain these documents. But Cox contends the loss of these documents compounds the prejudice from the loss of the Hargis and Zubia documents.

in April 2024, he first began talking with "department heads," including Chief Technology Officer Far Chinberdiev and Chief Revenue Officer Stan Deak, about document preservation. This was done at the direction of outside counsel. In their depositions, however, Chinberdiev and Deak testified that no one talked to them about making sure documents were not automatically deleted. In fact, Super Dispatch did not begin attempting to collect the Hargis and Zubia documents until November 2024. Fazilov also testified that he did not know what a litigation hold is, and that no written correspondence was issued to Super Dispatch employees instructing them not to destroy documents associated with the Cox dispute.

Super Dispatch discovery responses have been deficient in other ways. For example, Super Dispatch included incorrect basic information, such as information in its September 12, 2024, and November 15, 2024, interrogatory responses which identified Zubia as a current employee. In a December 2024 letter, Super Dispatch identified Zubia's departure date as September 20, 2024. It also violated Rule 37(c) by failing to identify several witnesses in its initial and supplementary disclosures and failing to disclose documents subsequently used by its expert witness on damages.

Finally, Super Dispatch claims it did not know that a departing employee's Google Suite account would be deleted until it attempted to collect the Hargis and Zubia documents in November 2024. However, as noted above, Super Dispatch had a policy of manually transferring departing employees' Google Docs to a manager to prevent deletion.

**Standard**

Failure to preserve ESI such as emails is governed by Federal Rule of Civil Procedure 37(e).[3] It provides that,

---

[3] Cox's opening brief also observes that the Court could also sanction any bad faith conduct by Super Dispatch under the Court's inherent authority. Br. at 8, ECF No. 139. The Court declines to analyze whether imposing sanctions

> If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
>> (1) upon finding prejudice to another party from loss of that information, may order measures no greater than necessary to cure the prejudice; or
>>
>> (2) only upon finding that the party acted with the *intent* to deprive another party of the information's use in the litigation may:
>>
>>> (A) presume that the lost information was unfavorable to the party;
>>>
>>> (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
>>>
>>> (C) dismiss the action or enter a default judgment.

(Emphasis added.)

In other words, to impose any sanctions under Rule 37(e) in this case the Court must find: (1) Super Dispatch should have preserved Hargis and Zubia's emails; (2) these emails were lost because Super Dispatch failed to take reasonable steps to preserve them; (3) the emails cannot be restored or replaced through additional discovery; and (4) the loss of these emails prejudiced Cox.[4] If these four conditions are met, then under Rule 37(e)(1) the Court "may order measures no greater than necessary to cure the prejudice." The range of allowable sanctions under 37(e)(1) "is quite

---

under its inherent authority is appropriate here for two reasons. First, Cox does not develop this argument further in its brief. Second, any evidence which would indicate bad-faith conduct would also indicate an intent to deprive Cox of this information, thus authorizing the Court to impose a severe sanction under 37(b)(2), making a bad-faith analysis under the Court's inherent authority essentially redundant.

[4] Neither party bears the burden of proving or disproving prejudice because "[d]etermining the content of lost information may be a difficult task in some cases, and placing the burden of proving prejudice on the party that did not lose the information may be unfair." Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment. "The rule leaves judges with discretion to determine how best to assess prejudice in particular cases." *Id*.

broad if they are necessary for this purpose" and "[m]uch is entrusted to the court's discretion." Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment.

If, however, the Court finds Super Dispatch acted with the intent to deprive Cox of these emails, then it may impose one or more of the sanctions listed in 37(e)(2), including an adverse inference instruction. Intent under Rule 37(e)(2) is rarely "proved by direct evidence, and a district court has substantial leeway to determine intent through consideration of circumstantial evidence, witness credibility, motives of the witnesses in a particular case, and other factors." *Morris v. Union Pacific R.R.*, 373 F.3d 896, 901 (8th Cir. 2004). Intent can be proved indirectly, and there need not be a "smoking gun." *Auer v. City of Minot*, 896 F.3d 854, 858 (8th Cir. 2018). But negligence is not enough. *Id*. There must be at least circumstantial evidence that a party was aware that relevant information was being destroyed; that is, the record must support an inference that the party consciously permitted the destruction of relevant evidence. *Id*.

**Analysis**

Cox argues both that the four conditions in Rule 37(e)(1) are met and Super Dispatch intended to deprive Cox of these emails within the meaning of Rule 37(e)(2). Cox requests that, at a minimum, the Court permit the parties to present evidence and argument to the jury regarding the loss of information and require Super Dispatch to pay Cox's attorneys' fees associated with investigating the deleted files and filing the pending motion. Additionally, since Super Dispatch's conduct was intentional, the Court should give an adverse inference instruction, instructing the jury that it may presume the information in the lost emails was unfavorable to Super Dispatch.

Super Dispatch does not dispute that the first three conditions of Rule 37(e)(1) are satisfied, conceding these points by its silence. It disputes the fourth element, however, arguing Cox has not been prejudiced by the lost information. Super Dispatch also argues that it did not act with

7

the intent to deprive Cox of using the lost information in the litigation, thus a sanction under Rule 37(e)(2), such as an adverse inference instruction, is not authorized.

### A. The 37(e)(1) requirements are satisfied.

Super Dispatch does not dispute that the first three elements are met, so the Court will not spend much time on this portion of the analysis.

That said, the Court holds the following. First, Super Dispatch had a duty to preserve Hargis and Zubia's emails once it received the January 15, 2024, letter from Cox discussing the outstanding dispute and directing Super Dispatch to preserve relevant materials, specifically including email. (At the latest, Super Dispatch had a duty to preserve the emails when Cox filed this case on April 23, 2024. *See Swindle v. Christy*, No. 20-06013-CV-SJ-GAF, 2021 WL 5297047, at *3 (W.D. Mo. Mar. 4, 2021) (holding a duty to preserve ESI may arise based on pre-litigation correspondence, or at the latest when the case is filed).) Hargis and Zubia were "key players" as evidenced by the fact that Super Dispatch identified them in its initial disclosures as individuals likely to have discoverable information. *See id.* at *4 (holding a duty to preserve ESI extends to "key players" in a defendant's employ "likely to have relevant information that could prove useful to an adversary").

Second, Super Dispatch failed to take easy and reasonable steps, such as copying the emails, to preserve them and prevent them from being automatically deleted. The fact that the emails were lost via routine operation of Super Dispatch's document retention policy is unavailing. It is reasonable to "require a party to suspend its routine document retention/destruction policy and put in place a litigation hold to ensure the preservation of relevant documents." *Paisley Park Enters., Inc. v. Boxill*, 330 F.R.D. 226, 233 (D. Minn. 2019); *see also Stevenson v. Union Pac. R. Co.*, 354 F.3d 739, 750 (8th Cir. 2004) ("After the specific document request . . . [defendant]

cannot rely on its routine document retention policy as a shield."). Super Dispatch's claim that Eldor Fazilov, its Legal and Compliance Manager, personally spoke with "department heads" in April about not destroying documents is factually dubious and unpersuasive because two department heads testified that he never spoke with them. More troubling though is the fact that Fazilov never issued any written directive for documents not to be deleted.

Third, the lost emails cannot be restored or replaced through additional discovery, as evidenced by Cox's diligent attempt to find them by conducting a reasonable amount of additional discovery. Although some of Hargis and Zubia's emails may have been sent to other individuals whose emails Super Dispatch produced, thus indirectly saving and producing these emails, this means that, at best, there is an incomplete record of the missing documents. This is problematic. *See Paisley Park*, 330 F.R.D. at 235–36 ("[E]ven when the information lost is cumulative to some extent, the loss of the information still has an impact because Plaintiffs cannot present the overwhelming quantity of evidence they otherwise would have to support their case.").

Super Dispatch's intimation that Cox should have conducted more third-party discovery to find any vestiges of the destroyed emails is unavailing. This argument is somewhat disingenuous because all it requires Super Dispatch to do is imagine something else Cox could have done and then say, "See, it could have done this." It ignores the reality that chasing this rabbit would require Cox to depose and subpoena dozens, perhaps hundreds, of potential customers, customers who likely would have resented being deposed or subpoenaed. Thus, Cox would have generated ill-will in the hope that it could find emails that Super Dispatch allowed to be destroyed. Deposing Hargis and Zubia under the circumstances would also be problematic for Cox, because it would have to depose these individuals without the emails to which they were privy, which would be needed to impeach them and hold them honest. The Court holds that insisting Cox do more than

9

it has already done here to find the documents Super Dispatch failed to preserve would be inequitable under the circumstances. It would amount to punishing Cox for Super Dispatch's errors.

Fourth, the Court finds Cox has been prejudiced by the loss of Hargis and Zubia's emails. "A party is prejudiced where relevant evidence is destroyed and the party cannot obtain that evidence through other means." *Swindle*, 2021 WL 5297047, at *4. The problem here, of course, is that no one knows what was in the deleted emails, so no one knows exactly what was lost. To paraphrase Donald Rumsfeld, we don't know what we don't know. In that sense, the situation here is like the one the court observed in *Paisley Park*:

> Plaintiffs are left with an incomplete record of the communications that Defendants had with both each other and third parties. Neither the Court nor Plaintiffs can know what ESI has been lost or how significant that ESI was to this litigation. The [Defendants'] claim that no prejudice has occurred is wholly unconvincing, given that it is impossible to determine precisely what the destroyed documents contained or how severely the unavailability of these documents might have prejudiced [Plaintiffs'] ability to prove the claims set forth in [their] Complaint.

*Paisley Park*, 330 F.R.D. at 236 (quotations omitted). The Court finds that given their positions in the company, the projects they worked on, and what is known from the rest of the record, it is likely that the lost Hargis and Zubia emails contained some information which would assist Cox in proving its case.

Hargis was the Manager for Chrome extension and Super Loadboard. These products' operation and how Super Dispatch marketed them to Central Dispatch customers are critical to several claims in this case, including false advertising, unfair competition, and tortious interference. Hargis was involved in how Super Dispatch positioned these products and communicated directly to customers to advise on these products. He also worked in customer

support, and one key issue in this case is Super Dispatch inducing Central Dispatch customers to violate the Central Dispatch Terms of Use, and the record includes some communications between Super Dispatch and its customers regarding Central Dispatch Terms of Use violations. *See, e.g.*, Message Thread dated Jan. 17, 2022; ECF No. 139–20 (discussing customer's message about being flagged for violating Central Dispatch Terms of Use through using Super Dispatch). While the Court has no reason to believe the lost documents contain any earth-shattering revelations, that is immaterial. Destroyed evidence may be prejudicial even if it is not a "smoking-gun." *See Stevenson*, 354 F.3d at 747–48; *Swindle*, 2021 WL 5297047, at *4.

The deletion of the Zubia documents is similarly prejudicial. As Vice President of Marketing, her responsibilities included communicating with customers. This is key to Cox Automotive's claims, including false advertising, unfair competition, and tortious interference. The record includes some evidence that Super Dispatch included false and misleading statements about Central Dispatch in promotional emails to potential customers while Zubia was Vice President of Marketing. But communications between Zubia and customers and communications between Zubia and other former Super Dispatch employees were lost because of Super Dispatch's failure to preserve her emails.

Thus, Cox was prejudiced.

**B.   There is insufficient evidence here to find Super Dispatch acted with intent to deprive Cox of the information, so Rule 37(e)(2) sanctions are not appropriate.**

The analysis now turns to whether Super Dispatch acted with the intent to deprive Cox of the information in these emails during the litigation, and thus whether the Court can impose a severe sanction under Rule 37(e)(2), such as issuing an adverse inference instruction.

Although it is a close call, the Court finds there is insufficient evidence that Super Dispatch acted with intent. The recent case law on this issue demonstrates that while a court "has

11

Case 4:24-cv-00292-DGK     Document 247     Filed 11/11/25     Page 11 of 14

substantial leeway to determine intent . . . there must be evidence of a serious and specific sort of culpability regarding the loss of the relevant ESI." *Paisley Park*, 330 F.R.D. at 233. Negligent conduct is insufficient to support severe sanctions. *Auer*, 896 F.3d at 858. In the present case, the most plausible explanation for why Hargis and Zubia's emails were lost is that Super Dispatch's Legal and Compliance Manager failed to issue a written litigation hold and then failed to follow up and ensure that all their emails were preserved. This behavior is best described as gross incompetence or gross negligence, not intentional destruction. Granted, there are several facts from which the Court could infer bad-faith and intent: (1) the amount of notice Super Dispatch had to preserve the emails and the fact that they were not lost until well-after the litigation began, *see SL EC, LLC v. Ashley Energy, LLC*, No. 4:18-CV-01377-JAR, 2021 WL 4281293, at *5 (E.D. Mo. Sept. 21, 2021) ("Destruction of critical evidence after litigation has begun is particularly egregious."); (2) the relative ease with which Super Dispatch could have preserved the emails; and (3) the fact that Super Dispatch has been cavalier in complying with its discovery obligations throughout this case, *see id.* at *6 (holding a court may contextualize the loss of ESI within a party's pattern of discovery abuse). But the Court is not convinced that the loss of these emails was intentional, or that the facts here are analogous to those in recent cases where a district court imposed Rule 37(e)(2) sanctions. For example, the facts here are not like those in *Paisley Park*, where a defendant deliberately "wiped" a phone and then discarded it after litigation began to deprive the plaintiff of information. *Paisley Park*, 330 F.R.D. at 237. Hence, the Court declines to impose sanctions under Rule 37(e)(2).

    **C.**    **The Court imposes the following sanctions under Rule 37(e)(1).**

As discussed above, the Court finds sanctions are appropriate under Rule 37(e)(1). Cox requests Rule 37(e)(1) sanctions in the form of an order permitting the parties to present evidence

and argument to the jury regarding the loss of information, as well as an award of attorneys' fees associated with investigating the deleted emails and this motion. In response, Super Dispatch argues that no sanctions are justified under Rule 37(e)(1). But it has not addressed the alternate question of, if the Court finds sanctions are justified under Rule 37(e)(1), what form such sanctions should take.

The Court finds the following sanctions are appropriate. First, an award of attorneys' fees is appropriate to cure the prejudice here and no greater than necessary to do that. Accordingly, on or before November 18, 2025, Cox shall file documentation of its reasonable attorneys' fees, costs, and expenses incurred in investigating the deleted emails and bringing this motion for sanctions.[5] Cox may file this information under seal. Super Dispatch shall have seven days to file any response, but this response shall not be used to attempt to relitigate whether the Court should impose sanctions. If Super Dispatch files a response, Cox shall have seven days to file a reply. The Court will then determine the amount of expenses to award and set a deadline, which will be before trial, for Super Dispatch to pay. Super Dispatch shall pay the entire amount of the sanction before being permitted to appear at trial.

Second, a jury instruction is appropriate here. The Court denies Cox's request to allow the parties to present evidence and argument to the jury regarding the loss of information because such a sanction—particularly allowing argument regarding the lost information—would effectively be an adverse inference instruction and greater than necessary to cure the prejudice. The Court will, however, read an instruction to the jury explaining that Super Dispatch was under a duty to preserve Hargis and Zubia's emails, but these emails were lost because of Super Dispatch's gross negligence. Consequently, in deciding Cox's claims against Super Dispatch, the

---

[5] Reasonable time spent compiling this information and reasonable time spent responding to any objections from Super Dispatch as to the amount is also compensable.

13

Case 4:24-cv-00292-DGK    Document 247    Filed 11/11/25    Page 13 of 14

jury cannot hold Cox's failure to have corroborating evidence from these two against Cox. The Court holds this sanction is required to cure the prejudice but no greater than necessary.

## Conclusion

For the foregoing reasons, Cox's motion for sanctions (ECF No. 133) is GRANTED IN PART and DENIED IN PART.

**IT IS SO ORDERED.**

Date:   November 11, 2025           /s/ Greg Kays
                                                                GREG KAYS, JUDGE
                                                                UNITED STATES DISTRICT COURT