**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**
**WESTERN DIVISION**

| | | |
|---|---|---|
| COX AUTOMOTIVES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:24-cv-00292-DGK |
| | ) | |
| SUPER DISPATCH INC., | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO EXCLUDE EXPERT TESTIMONY**

This case arises from Plaintiff Cox Automotives, Inc's ("Cox") allegations that Defendant Super Dispatch Inc. ("Super Dispatch") has committed false advertising, unfair competition, and other business torts against Cox. Super Dispatch denies the allegations.

Now before the Court is Defendant Super Dispatch Inc.'s Motion to Exclude Expert Testimony of Dr. Michael Bailey. ECF 138. For the following reasons, the motion is GRANTED with respect to one narrow portion of his testimony—Dr. Bailey will not be allowed to offer an opinion on an ultimate issue in the case, namely whether the measures Cox took to protect trade information and restrict unauthorized access were "reasonable" under the Missouri Uniform Trade Secrets Act ("MUTSA")—and the balance of the motion is DENIED.

When the admissibility of expert testimony is challenged, the district court must make "a preliminary determination of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592-93 (1993). The party seeking to introduce the expert's testimony bears the burden of establishing its admissibility by a preponderance of the evidence. *Lauzon v. Senco Prods., Inc.*, 270 F.3d 681, 686 (8th Cir. 2001).

Under Federal Rule of Evidence ("FRE") 702, a witness may give an expert opinion if the following conditions are met:

> (a) the expert's scientific, technical or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

In other words, the proponent must show that the expert's opinions are relevant, the expert is qualified to offer them, and "the methodology underlying his conclusions is scientifically valid." *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 757-58 (8th Cir. 2006). Doubts should be resolved in favor of admissibility. *Id*. at 758.

The Eighth Circuit has repeatedly observed that, as a rule, "'the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility,'" but "'if the expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury, it must be excluded.'" *Lawrey v. Good Samaritan Hosp.*, 751 F.3d 947, 952 (8th Cir. 2014) (quoting *Neb. Plastics, Inc. v. Holland Colors Ams., Inc.*, 408 F.3d 410, 415 (8th Cir. 2005)).

Cox has retained an expert in computer security, Dr. Micheal Bailey (1) to evaluate the cybersecurity measures Cox employed to protect its Central Dispatch platform; and (2) to analyze the functionality of the software tools that Super Dispatch uses to interact with Central Dispatch. Super Dispatch moves to strike the first category of testimony on the basis that it will not be helpful to the jury, is based on insufficient facts, and his evaluation is conclusory. With respect to the second category, Super Dispatch argues the functionality of the software tools is "a factual inquiry" that does not require expert testimony.

All of Super Dispatch's arguments are without merit. With respect to his testimony about Cox's cybersecurity measures, one of the issues in this case is whether Super Dispatch violated

MUTSA. Under MUTSA, the jury must determine whether Cox made "efforts that are reasonable under the circumstances" to maintain the secrecy of information available in the Central Dispatch platform. Mo. Rev. Stat. § 417.453(4)(b). As an expert in computer security,[1] Dr. Bailey's testimony will help the jury understand industry practices for protecting electronic data and the types of controls put in place by Cox. Thus, his testimony is relevant. (Indeed, Super Dispatch's suggestion that his testimony will not be helpful to the jury is borderline frivolous.) Further, his testimony is reliable. Dr. Bailey's evaluation was guided by three widely recognized cybersecurity frameworks and included interviews with a knowledgeable Cox witness, direct interaction with the Central Dispatch platform, and review of relevant documentation. Based on those assessments, Dr. Bailey evaluated whether the cybersecurity measures in place for Central Dispatch are consistent with recognized guidelines and industry expectations. Super Dispatch's concerns about his evaluation goes to the credibility of Dr. Bailey's testimony, not its admissibility. Finally, his testimony is not conclusory in any sense of the word. It is based on substantive analysis as demonstrated by his report. Granted, Dr. Bailey may not testify that Cox's efforts to maintain the secrecy of information in the Central Dispatch were reasonable under MUTSA—an issue reserved for the jury—but he may testify that they were consistent with respect to industry expectations, standards, and guidelines. Cox may then argue during its closing that this meets the MUTSA standard for reasonable.

The second category of Dr. Bailey's testimony—analysis of the various software tools used by Super Dispatch—is also admissible. The functionality of the tools Super Dispatch used to interact with Central Dispatch, e.g., the digital "scraper" that Super Dispatch allegedly used to mine information behind Central Dispatch's paywall without authorization, underlies all of Cox's

[1] Super Dispatch does not challenge Dr. Bailey's qualifications as an expert in computer security.

claims. Dr. Bailey's testimony will help the jury understand how these tools operate. Thus, his testimony is relevant. It is also reliable. His analysis includes source code where available (i.e., scraper and Chrome extension), direct interaction where available (i.e., Chrome extension), and review of relevant documentation and testimony.

Finally, the Court rejects Super Dispatch's suggestion that its access of the Central Dispatch platform is a "factual inquiry" that should only be presented to the jury through "fact witnesses with personal knowledge." In fact, this argument is borderline frivolous. This argument misconstrues one of the roles of expert testimony: to help the trier of fact understand the evidence. *Daubert*, 509 U.S. at 592 ("Unlike an ordinary witness . . . an expert is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation."). Evidence regarding the software tools that Super Dispatch used to access Central Dispatch will involve highly technical subject matter, including source code, the operation of browser extensions, the use of an App to extract data from a third-party website, and two techniques for using automated means to post information to a third-party website. Expert testimony on these complex technical issues will be helpful to the jury. *See Gdovin v. Cummins Cent. Power, LLC*, No. 3:10-CV-0150-DGK, 2012 WL 3493949, at *3 (W.D. Mo. Mar. 30, 2012) (holding expert testimony explaining various terms relating to parts of a diesel generator would assist the jury).

Accordingly, the motion is GRANTED IN PART and DENIED IN PART.

**IT IS SO ORDERED.**

Date:   November 11, 2025            /s/ Greg Kays
                                    GREG KAYS, JUDGE
                                    UNITED STATES DISTRICT COURT